UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

GEORGE NWIZUZU,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil File No. 01-17 (DWF/JGL)

**REPORT AND RECOMMENDATION**

George Nwizuzu, Federal Correctional Institution - Waseca, P.O. Box 1500, Waseca, MN, 56093, Plaintiff, pro se.

Lonnie F. Bryan, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN, 55415, for Defendant.

JONATHAN LEBEDOFF, United States Magistrate Judge

Plaintiff, a prisoner at the Federal Correctional Institution in Waseca, Minnesota, ("FCI-Waseca"), is seeking compensation under the Federal Tort Claims Act, ("FTCA"), for a lost pair of boots. Defendant, the United States of America, has filed a motion pursuant to Fed. R. Civ. P. 12(b)(1), seeking to have this action summarily dismissed for lack of subject matter jurisdiction. The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it will be recommended that Defendant's motion be GRANTED, and that the action be DISMISSED for lack of jurisdiction.

## I. BACKGROUND

Plaintiff has been a federal prisoner for many years. Before being assigned to his current prison home at FCI-Waseca, he was confined at the Federal Medical Center at Rochester, Minnesota, ("FMC-Rochester"). On or about December 11, 1999, Plaintiff was

FILED NOV 30 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

assigned to a segregated detention unit at FMC-Rochester. Some of his personal possessions were taken from him and placed in storage at that time.

Plaintiff alleges that one of the items that was taken from him, and stored while he was in segregated confinement, was a pair of black boots. He further alleges that when he got out of segregated confinement and reclaimed his stored possessions, the black boots were missing. He inquired about the missing boots, but he never got them back.

On or about February 14, 2000, Plaintiff submitted a formal written claim to the federal Bureau of Prisons, ("BOP"), seeking administrative relief under the FTCA. (A copy of Plaintiff's FTCA administrative claim is attached to his original complaint. [Docket No. 1.]) He claimed that the boots had been "lost" by Timothy Geier, a correctional officer at FMC-Rochester. Plaintiff asked for $64.00 to compensate him for his lost boots.

In a memorandum dated June 20, 2000, the BOP formally notified Plaintiff that his FTCA administrative claim had been denied. (A copy of the denial notice is also attached to Plaintiff's original complaint.) According to Plaintiff, the denial notice was sent to him (by certified mail) on June 25, 2000. A stamped notation on the outside of the envelope indicates that it was received in the mail room at FCI-Waseca on June 27, 2000.[1] The BOP's denial notice expressly informed Plaintiff, "[i]f you are dissatisfied with our agency's

[1] A copy of the front side of an envelope that purportedly contained the denial notice is attached as "Exhibit 1" to Plaintiff's "Respons [sic] To The United States Of America Memorandum Of Law." (Docket No. 22). In the text of that "Respons[e]," (at p. 5), Plaintiff states that the envelope was "post-marked" on June 25, 2000. Although the Court cannot readily determine exactly when the denial notice was sent, it is clear that it must have been sent sometime between June 20, 2000, (the date that appears on face of the notice), and June 27, 2000, (the date when it was stamped "received" by the mail room at FCI-Waseca). For present purposes, the Court will accept Plaintiff's assertion that the notice was sent on June 25, 2000.

action, you may file suit in an appropriate U.S. District Court no later than 6 months after the date of mailing of this notification."

Plaintiff took no further action on his FTCA claim until December 21, 2000. On that date he completed and signed a document entitled "Motion For Leave To File A Complaint Against Federal Correctional Institution Rochester Pursuant to the Federal Tort Claims Act." (Docket No. 2.) Plaintiff mailed this so-called "motion" to our Court, and it was received in the Clerk's Office on December 26, 2000. The Clerk's Office examined Plaintiff's submission and concluded that even if it was intended to be a pleading, (despite being labeled "motion"), it could not be accepted for filing, because it was not accompanied by either the statutory filing fee of $150, (see 28 U.S.C. § 1914(a)), or by an application seeking leave to proceed in forma pauperis ("IFP"), (see 28 U.S.C. § 1915(a)). Plaintiff's self-styled "motion" was therefore returned to him by the Clerk's Office on December 26, 2000.[2]

The Clerk's Office sent Plaintiff a cover letter with his returned "motion," explaining that the "motion" could not be filed as a civil complaint, because it was not accompanied by the filing fee or an IFP application. The cover letter advised Plaintiff that if he could not afford the $150 filing fee, he could apply for IFP status. A copy of the IFP application form

---

[2] It was entirely appropriate for the Clerk's Office to return Plaintiff's motion. Even if that submission was intended to be a complaint, (despite the fact that it was clearly identified as a "motion"), the Clerk's Office acted properly in refusing to accept it and file it, because it was not accompanied by a filing fee or IFP application. 28 U.S.C. § 1914(c) provides that "[e]ach district court by rule or standing order may require advance payment of fees." And our Local Rule 4.2(c) provides that "[t]he Clerk may refuse to docket or file any suit or proceeding, writ or other process, or any paper or papers in any suit or proceeding until the fees of the Clerk are paid, except for in forma pauperis cases." Because Plaintiff did not submit either the filing fee or an IFP application with his "motion," his submission was properly returned and has no legal significance here.

prescribed for use in this District was enclosed with the letter. The letter also informed Plaintiff that if he wanted to file a civil complaint, he should use the complaint form prescribed for prisoner cases filed in this District. A copy of that form was also enclosed.

Plaintiff must have received the letter and enclosures from the Clerk's Office by December 28, 2000, because on that date he completed and signed his original complaint, (Docket No. 1), and his IFP application, (Docket No. 3). He mailed both of those documents back to the Court, (along with his originally submitted "motion;" [Docket No. 2]), and they were received and filed by the Clerk's Office on January 5, 2001.

On March 16, 2001, Plaintiff filed an amended complaint, "as a matter of course," pursuant to Fed. R. Civ. P. 15(a). (Docket No. 7.) The Court ordered Defendant to file a response to the amended complaint by no later than June 16, 2001, which was a Saturday. (Docket No. 13.) On Monday, June 18, 2001, Defendant responded to the amended complaint by filing the motion to dismiss that is now before the Court. (Docket No. 14.)

In its present motion, Defendant argues, inter alia, that this action should be dismissed for lack of subject matter jurisdiction, because the action was not commenced in a timely manner. The Court agrees.

**II. DISCUSSION**

"Section 2401(b) of the Federal Tort Claims Act [28 U.S.C. § 2401(b)] requires that claimants present a claim to an appropriate federal agency within two years after the claim accrues and file an action within six months of the agency's certified or registered mailing of a claim's final denial." Slaaten v. United States, 990 F.2d 1038, 1041 (8th Cir. 1993). Furthermore, "[c]ompliance with the statute of limitations of 28 U.S.C. § 2401(b) is a jurisdictional prerequisite to suit under the Federal Tort Claims Act." Osborn v. United

States, 918 F.2d 724, 728 (8th Cir. 1990) (emphasis added), citing Radman v. United States, 752 F.2d 343, 344 (8th Cir. 1985). Therefore, an FTCA lawsuit must be dismissed for lack of subject matter jurisdiction, if the FTCA claimant has not complied with both of the requirements of the § 2401(b) statute of limitations.

In this case, Plaintiff met the first requirement of the statute of limitations by filing an administrative FTCA claim with the BOP within two years after the accrual of his lost boots claim. However, he did not meet the second requirement, because he did not commence his lawsuit within six months after the BOP sent him a denial notice.

Plaintiff has expressly acknowledged that the denial notice in this case was sent no later than June 25, 2000, (see footnote 1, supra), which meant that he had to commence an action by December 25, 2000. Because that deadline fell on a Court holiday, (Christmas Day), the action had to be commenced by December 26, 2000. However, the complaint and IFP application that commenced the present action, (see Fed. R. Civ. P. 3 ("[a] civil action is commenced by filing a complaint with the court")), were not received and filed by the Clerk's Office until January 5, 2001 – ten days after the filing deadline.

Plaintiff argues that his complaint would be timely if he were given the benefit of the "mailbox rule" that comes from the Supreme Court's decision in Houston v. Lack, 487 U.S. 266 (1988).[3] Under the mailbox rule, when a prisoner attempts to submit a document to a court for filing, the document is deemed to have been filed on the date when it is delivered to prison officials for mailing to the court. See Grady v. United States, 269 F.3d

---

[3] Petitioner cites Fed. R. App. P. 25[(a)(2)](c) in support of his mailbox rule argument, but that citation is irrelevant here because the present proceeding is not an appeal. If Plaintiff has a valid mailbox rule argument, it must be based on the case law emanating from the Houston case.

913, 916 (8th Cir. 2001) ("[i]n its original form, the prison mailbox rule deemed a pro se prisoner's notice of appeal 'filed' at the moment he delivered it to the warden for forwarding to the clerk of the district court"). Assuming that the mailbox rule is applicable here,[4] the filing date for Plaintiff's present lawsuit would not be the date when the Clerk of Court received and filed his original complaint, (which was January 5, 2001); instead, the filing date would be the date when he gave his original complaint and IFP application to prison officials at FCI-Waseca and asked them to mail it to the Court.

The present record does not clearly indicate exactly when Plaintiff gave his complaint and IFP application to prison officials for mailing. However, both the complaint and the IFP application plainly indicate that they were completed and executed on December 28, 2000. Plaintiff obviously could not have given those documents to prison officials for mailing before he completed them and signed them, which means that the earliest possible date that Plaintiff could have given his complaint and IFP application to prison officials was December 28, 2000. Therefore, even with the benefit of the mailbox rule, the present action would be deemed to have been filed on December 28, 2000, (at the earliest), which was two days after the December 26th deadline for commencing an FTCA lawsuit. In short, even under the mailbox rule, Plaintiff commenced this action at least two days too late.

---

[4] Our Court of Appeals has noted that the reasoning of Houston appears to be applicable to a wide variety of prisoner submissions. Hamm v. Moore, 984 F.2d 890, 892 (8th Cir. 1992); Miller v. Benson, 51 F.3d 166, 169, n. 2 (8th Cir. 1995); Grady, 269 F.3d at 916. And at least one other federal court has expressly held that Houston's mailbox rule does apply to prisoners filing FTCA complaints. Garvey v. Vaughn, 993 F.2d 776, 783 (11th Cir. 1993). Therefore, while it is unnecessary to actually decide whether the mailbox rule is applicable here, (because the Court finds the present action to be untimely in any event), it is reasonable to assume that Plaintiff should be given the benefit of the rule.

Plaintiff also argues that Defendant's motion to dismiss should not be granted, because the motion itself was untimely. This argument is rejected for two reasons.

First, Defendant's motion to dismiss was not untimely. The due date for Defendant's response to Plaintiff's amended complaint was Saturday, June 16, 2001, a date on which the Clerk's Office was not open for business. Defendant's response, (i.e., the present motion to dismiss), was timely, because it was filed on the first day after the due date that the Court was open for business – Monday, June 18, 2001. See Fed. R. Civ. P. 6(a) (providing that when a filing deadline falls on a Saturday, Sunday or legal holiday, the deadline is extended to the next day that the Clerk's Office is open for business).

Secondly, and more importantly, even if Defendant's motion were untimely, and even if that motion were therefore stricken, this action still would have to be dismissed. A federal court must always be satisfied that it has subject matter jurisdiction over a proceeding; and if subject matter jurisdiction is lacking, the court, acting on its own initiative if necessary, must dismiss the action. Fed. R. Civ. P. 12(h)(3);[5] Williams v. Rogers, 449 F.2d 513, 518 (8th Cir. 1971) ("where jurisdiction does not exist the court, whether trial or appellate, shall dismiss the action sua sponte"), cert. denied, 405 U.S. 926 (1972), (citing Louisville and Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908)). As previously noted, our Court of Appeals has clearly indicated that federal courts do not have subject matter jurisdiction in FTCA actions that have not been filed in a timely manner. Osborn, 918 F.2d at 728. Because timeliness is a "jurisdictional prerequisite," (id.), and Plaintiff did

---

[5] Fed. R. Civ. P. 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

not commence his present FTCA action in a timely manner, the Court would be required to dismiss this action for lack of jurisdiction even if Defendant's motion were stricken.

**III. CONCLUSION**

In sum, the Court concludes that subject matter jurisdiction does not exist in this case, because Plaintiff did not commence this action within the six-month statute of limitations prescribed by 28 U.S.C. § 2401(b).[6] It will therefore be recommended that Defendant's Rule 12(b)(1) motion be granted, and that this action be dismissed.

Notwithstanding the dismissal of this action, Plaintiff shall remain liable for the unpaid balance of the $150 filing fee.[7] He has paid only $83.57 so far, so he still owes

---

[6] Defendant has also argued that this action should be dismissed pursuant to 28 U.S.C. § 2680(c), which excludes FTCA coverage for claims "arising in respect of... the detention of any goods, merchandise, or other property by any... law enforcement officer." Defendant contends that Plaintiff's present claim arises from the detention of property by a law enforcement officer, (namely the BOP correctional officer who allegedly took his boots), and his FTCA claim is therefore barred by § 2680(c). Defendant's argument is not supported by any binding legal precedent, but it has been adopted in several other prisoner FTCA cases brought in this District. Hernandez v. Hawks, Civil No. 5-94-145 (D.Minn. 1995), 1995 WL 692982; Farmer v. Jacobsen, No. 97-2562 (RHK/RLE) (D.Minn. 1998), 1998 WL 957237; Parmelee v. Carlson, No. 95-1901 (8th Cir. 1996), 1996 WL 64701 (unpublished opinion). Although the Court finds Defendant's § 2680(c) argument to be persuasive, there is no need to formally accept and adopt it here, because this action is so clearly barred by the statute of limitations.

[7] Under the Prison Litigation Reform Act ("PLRA"), prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

$66.43. Prison officials will have to deduct that amount from his prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2).

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's motion to dismiss, (Docket No. 14), be GRANTED;

2. This action be DISMISSED for lack of jurisdiction; and

3. Notwithstanding the dismissal of this action, Plaintiff should remain liable for the unpaid balance of the filing for this action, namely $66.43, which should be paid in installments pursuant to 28 U.S.C. § 1915(b)(2).

Dated: Nov 30, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by Dec. 18, 2001, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

# Please forward this announcement to the recipient of this fax.

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500